**Antonio Jose Pacheco MOTTA, Petitioner/Plaintiff,**

v.

**DISTRICT DIRECTOR, IMMIGRATION AND NATURALIZATION SERVICE, Respondent/Defendant.**

**Civ. A. No. 94–11819–DPW.**

United States District Court, D. Massachusetts.

Nov. 28, 1994.

Judgment Nov. 29, 1994.

---

Joseph S. Callahan, Fall River, MA, for plaintiff Antonio Jose P. Motta.

Frank Crowley, Immigration & Naturalization, Sp. Asst. U.S. Atty., Boston, MA, for defendant District Director, I.N.S.

**1.** There were two earlier hearings, on April 25, 1989 and on July 24, 1989. Because these hearings were very brief and concerned only procedural matters, (Administrative Record [hereinafter "A.R."] at 65–71), I will refer to the October 13, 1989 hearing as the initial hearing or as the deportation hearing.

## MEMORANDUM AND ORDERS

WOODLOCK, District Judge.

An inattentive semi-retired lawyer represented the Petitioner in deportation proceedings. The lawyer let the administrative appeal date lapse, apparently while he wintered in Florida. He then filed the notice of appeal about a month late. Some 53 months thereafter the Board of Immigration Appeals, in a one-page decision, denied the appeal as "clearly untimely." Acting pursuant to habeas corpus jurisdiction, I will stay Petitioner's deportation until he has been provided with what an ineffective attorney and an unseasonably insensible administrative process have conspired to deny him: a resolution on the merits of his appeal.

### I.

Petitioner/Plaintiff Antonio Jose Pacheco Motta is a citizen of Portugal who entered the United States as a permanent resident on February 20, 1974. He was charged with being deportable under 8 U.S.C. § 1182(a)(2)(A)(I) (Supp. V 1994) (Section 241(a)(2)(A) of the Immigration and Nationality Act (hereinafter "INA")) as an alien who has been convicted of two crimes of moral turpitude.

A deportation hearing was held on October 13, 1989.[1] Petitioner conceded deportability but sought a discretionary waiver under 8 U.S.C. § 1182(c) (Supp. V 1994) (Section 212(c) of INA).[2] On January 19, 1990, Immigration Judge Bagley denied Petitioner's request for relief. Although the Immigration Judge informed Petitioner's attorney, M. David Scheinman, that the deadline for filing an appeal was January 29, 1990, (A.R. at 63, 64, 145), Attorney Scheinman did not file the appeal until February 21, 1990, (A.R. at 58). Attorney Scheinman died on April 17, 1992. (A.R. at 54). Almost four and one-half years

**2.** On its face, Section 212(c) applies only to exclusion proceedings involving returning aliens, see 8 U.S.C. § 1182(c) (Supp. V 1994). Section 212(c) has been judicially, and administratively, extended to apply to resident aliens, such as Petitioner, who have never left the United States. See Campos v. INS, 961 F.2d 309, 312–13 (1st Cir.1992) and cases cited therein.

after the appeal was actually filed, the Board of Immigration Appeals (hereinafter "BIA"), in a one-page decision, dismissed the appeal on July 15, 1994, as "clearly untimely." (A.R. at 57).

Petitioner retained new counsel, Joseph S. Callahan, in September of 1994. On September 6, 1994, Petitioner filed his first Motion to Reopen and Request for Stay of Deportation with Immigration Judge Sheppard. (A.R. at 25). Petitioner also filed an Application for Stay of Deportation with Respondent, the District Director of the Immigration and Naturalization Service (hereinafter "INS"). (A.R. at 9). Respondent immediately denied Petitioner's application.[3] (A.R. at 1–3).

Petitioner filed a complaint for declaratory and injunctive relief, and a petition for writ of habeas corpus, with this Court on September 9, 1994. That same day, Immigration Judge Sheppard denied Petitioner's Motion to Reopen and Request for Stay of Deportation. (A.R. at 4–6). On September 19, 1994, Petitioner filed an appeal with the Board of Immigration Appeals challenging Immigration Judge Sheppard's refusal to reopen Petitioner's case. Petitioner also sought a stay of deportation from Respondent. Also, on September 19, the Respondent filed a motion to dismiss this proceeding. Respondent denied Petitioner's second application for a stay on September 20, 1994, apparently without Petitioner's knowledge because on September 21, 1994 Petitioner filed an Amended Complaint stating that his request for a stay had not yet been acted upon.

## II. *Jurisdiction*

Petitioner's "Amended Complaint for Declaratory and Injunctive Relief and Petition for Writ of Habeas Corpus (With Stay Deportation)" is grounded on his claim that he was denied due process under the Fifth Amendment as a result of ineffective assistance of counsel. Based on this claim, Petitioner argues that Respondent should have granted his requests for a stay of deportation under Section 212(c) of the INA, which authorizes discretionary relief from deportation under certain circumstances.[4]

I must begin with an analysis of my jurisdiction to act on this matter. The allocation of jurisdiction between the District Courts and the Courts of Appeals by the Immigration and Nationality Act has been a source of some confusion. Originally, the Act gave the district courts jurisdiction over all causes, civil and criminal, arising under any of the provisions of the Act. 8 U.S.C. § 1329. In 1961, Congress added Section 106(a), 8 U.S.C. § 1105a, to "abbreviate the process of judicial review of deportation orders" and prevent persons subject to deportation from "forestalling departure by dilatory tactics in the courts." *Foti v. INS*, 375 U.S. 217, 224, 84 S.Ct. 306, 311, 11 L.Ed.2d 281 (1963). 8 U.S.C. § 1105a(a) (Supp. V 1994) provides that the "sole and exclusive procedure" for judicial review of all final orders of deportation shall be through the Courts of Appeals. Congress sought to eliminate "the previous

---

**3.** There would have been an automatic stay of deportation if Petitioner had appealed the BIA's decision to the First Circuit, *see* 8 U.S.C. § 1105a(a)(3) (Supp. V 1994), by October 13, 1994. *See* 8 U.S.C. § 1105a(a)(1) (Supp. V 1994) (petition must be filed "not later than 90 days after the date of issuance of the final deportation order"); 8 C.F.R. § 243.1 (West 1994) ("an order of deportation ... made by the special inquiry officer ... shall become final upon dismissal of an appeal by the Board of Immigration Appeals ... or upon expiration of the time allotted for appeal when no appeal is taken"); *Gonzalez–Julio v. INS*, 34 F.3d 820, 822 (9th Cir.1994); *Arango–Aradondo v. INS*, 13 F.3d 610, 612, 614–15 (2d Cir.1994) (holding filing within time limit jurisdictional prerequisite).

**4.** Petitioner also claims Respondent's denial of a discretionary stay of deportation was "arbitrary,

capricious, and [an] abuse of discretion or otherwise not in accordance with law," in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), and contrary to constitutional right, power, privilege, or immunity, in violation of the Administrative Procedure Act, 5 U.S.C. § 706(2)(B). Since I have decided to grant Petitioner a stay of deportation based on his Immigration and Nationality Act claim, I need not determine whether this Court has jurisdiction over Petitioner's APA claim.

Petitioner also claims Respondent violated 42 U.S.C. § 1983. It is settled law, however, that Section 1983 does not apply to actions by federal officials, such as Respondent, acting under color of federal law. *See, e.g., Soldevila v. Secretary of Agriculture*, 512 F.2d 427, 429 (1st Cir.1975). Thus, Petitioner's civil rights claim will be dismissed.

initial step in obtaining judicial review—a suit in a District Court—" and restrict review to the Courts of Appeals, subject only to the Supreme Court's certiorari jurisdiction. *Foti,* 375 U.S. at 224, 84 S.Ct. at 311.

The Supreme Court has construed the phrase "final order of deportation" to include "all determinations made during and incident to the administrative proceeding conducted by a special inquiry officer, and reviewable together by the Board of Immigration Appeals, such as orders denying voluntary departure pursuant to § 244(e) and orders denying the withholding of deportation under § 243(h)," *Foti,* 375 U.S. at 229, 84 S.Ct. at 314, refusals to suspend deportation under § 244(a)(5), *id.,* and denials of motions to reopen, *Giova v. Rosenberg,* 379 U.S. 18, 85 S.Ct. 156, 13 L.Ed.2d 90 (1964) (per curiam), which are " 'intimately and immediately associated' with the final orders they seek to challenge," *Cheng Fan Kwok v. INS,* 392 U.S. 206, 217, 88 S.Ct. 1970, 1976, 20 L.Ed.2d 1037 (1968) (footnote omitted). *See also INS v. Chadha,* 462 U.S. 919, 937–38, 103 S.Ct. 2764, 2777–78, 77 L.Ed.2d 317 (1983) (Court of Appeals has exclusive jurisdiction to review all matters upon which validity of final order of deportation is contingent).

■ The district courts continue to have jurisdiction over orders denying ancillary relief, which are not entered in the course of the deportation hearing or the denial of a motion to reopen. *See Cheng Fan Kwok,* 392 U.S. at 208, 88 S.Ct. at 1972 (holding Court of Appeals lacked exclusive jurisdiction to review District Director's denial of a stay of deportation); *Emmanuel v. INS,* 579 F.Supp. 1541 (D.V.I.1984); *Caporali v. Whelan,* 582 F.Supp. 217 (D.Mass.1984); *Kemper v. INS,* 705 F.2d 1150 (9th Cir.1983).

The narrative reconciliation of 8 U.S.C. § 1329 and 8 U.S.C. § 1105(a) set forth above does not resolve the question of the scope of district court habeas jurisdiction in INS cases, however. Section 1105a(a)(10)

(Supp. V 1994), provides that "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." [5] This section authorizes the district courts to entertain habeas corpus petitions, consistent with their power under 28 U.S.C. § 2241. The House Committee on the Judiciary explained:

> This section clearly specifies that the right to habeas corpus is preserved to an alien in custody under a deportation order. In that fashion, it excepts habeas corpus from the language which elsewhere declares that the procedure prescribed for judicial review in circuit courts shall be exclusive. The section in no way disturbs the Habeas Corpus Act in respect to the courts which may issue writs of habeas corpus: aliens are not limited to courts of appeals in seeking habeas corpus.

H.R.Rep. No. 1086, 87th Cong., 1st Sess. (1961), *reprinted in* 1961 U.S.C.C.A.N. 2950, 2973. *See generally Williams v. INS,* 795 F.2d 738, 744 n. 3 (9th Cir.1986). In *Foti,* the Supreme Court cited § 106(a)(9), which is now 8 U.S.C. § 1105a(a)(10), and expressly noted that "our decision in this case in no way impairs the preservation and availability of habeas corpus relief." 375 U.S. at 231 (footnote omitted).

■ The term "in custody" for the purposes of general habeas proceedings has been construed broadly, to include any significant restraint on liberty, such as parole *Jones v. Cunningham,* 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), and release on personal recognizance, *Hensley v. Municipal Court,* 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), at least where the Petitioner has been convicted in state court and has exhausted all available state court remedies, *Justices of Boston Municipal Court v. Lydon,* 466 U.S. 294, 301–02, 104 S.Ct. 1805, 1809–10, 80 L.Ed.2d 311 (1984). Clearly Petitioner is in custody here by even the most stringent definition of a custody requirement.

---

**5.** Section 1105a was amended by the Violent Crime Control and Law Enforcement Act of 1994, Pub.L. No. 103–322, 103d Cong., 2d Sess., Sept. 13, 1994, to limit judicial review of deportation orders issued pursuant to Section 242A(b) of the Act. Because Petitioner's deportation or-der was issued pursuant to Section 241(a)(2)(A), this amendment is not applicable. In any event, the recent amendment applies only to aliens, unlike petitioner, against whom deportation proceedings are initiated after September 13, 1994, *see* Pub.L. No. 103–322, § 130004(d).

Of course, if the district court's habeas corpus jurisdiction in 8 U.S.C. § 1105a(a)(10) for persons in custody facing deportation were to allow review of a final order of deportation that ordinarily would be within the exclusive jurisdiction of the Court of Appeals, then the "exception" of district court review could easily swallow the rule. *See Daneshvar v. Chauvin,* 644 F.2d 1248, 1251 (8th Cir.1981) (holding habeas corpus review available only to review a discretionary denial of stay of deportation where petitioner did not seek review of the merits of the deportation order itself); *United States ex rel. Parco v. Morris,* 426 F.Supp. 976, 978 n. 4 (E.D.Pa.1977) ("Habeas corpus is an appropriate procedure to review the denial of discretionary relief from deportation where deportability itself is not in issue") (citations omitted); *Te Kuei Liu v. INS,* 483 F.Supp. 107 (S.D.Tex.1980) (holding court lacked habeas jurisdiction to review challenge to INS determination of deportability but could review District Director's denial of a stay, if such a stay had been requested).

On the other hand, limiting habeas corpus review under 8 U.S.C. § 1105a(a)(10) to claims that could be heard under 8 U.S.C. § 1329 renders § 1105a(a)(10) superfluous. For this reason, several courts have concluded that habeas jurisdiction under § 1105a(a)(10) may overlap, to some degree, with Court of Appeals jurisdiction under § 1105a(a). *See United States ex rel. Marcello v. District Director,* 634 F.2d 964, 969 (5th Cir.) (holding habeas corpus review of BIA denial of suspension of deportation authorized so long as alien was in "actual, physical custody in place of detention"), *cert. denied sub nom. Marcello v. District Director,* 452 U.S. 917, 101 S.Ct. 3052, 69 L.Ed.2d 421 (1981); *Sotelo Mondragon v. Ilchert,* 653 F.2d 1254, 1256 (9th Cir.1980) ("The district court has jurisdiction, including habeas jurisdiction, to review denials of requests for discretionary relief [including waiver of deportability under Section 212(c) ] where the proceedings are held separately from the deportation proceedings"); *El-Youssef v. Meese,* 678 F.Supp. 1508, 1516 (D.Kan.1988) ("habeas corpus jurisdiction in section 1105a(a)(9) [now § 1105a(a)(10) ] is not restricted by the 'exclusive jurisdiction' provision in section 1105a(a)").

▇ Although I am inclined to agree with the intermediate position reached by the Tenth Circuit in *Galaviz–Medina v. Wooten,* 27 F.3d 487, 491–92 (10th Cir.1994) (holding habeas relief under § 1105a(a)(10) limited to traditional habeas claims such as denial of due process), *petition for cert. filed,* No. 93–6173 (Sept. 19, 1994), in light of my decision to grant a stay of deportation pending BIA review of Petitioner's motion to reopen, and to remand to the District Director to make an initial determination as to whether Petitioner should be released, I need not discern the outer limits of habeas review under 8 U.S.C. § 1105a(a)(10) at this time.[6] It is clear that habeas corpus review, and review under 8 U.S.C. § 1329, at a minimum, extends to Respondent's denial of a stay of deportation.

III. *Personal Background of Petitioner*

A brief review of Petitioner's background—taken from the Administrative Record, and primarily from Petitioner's testimony therein—is needed to understand the dispute regarding the merits of his claims. Petitioner was born in the Azores, Portugal on January 17, 1962. He entered the United States as a permanent resident with his parents and siblings on February 20, 1974. Petitioner has been married since 1983. His wife, who also was born in Portugal, was naturalized in 1985. They have two children (ages 4 and 12) who are United States citizens. At the time of the deportation hearing,

6. The difficulty of such an undertaking in this unsettled area is illustrated by *Williams v. INS,* 795 F.2d 738 (9th Cir.1986), in which the Ninth Circuit somewhat reluctantly concluded that district court habeas jurisdiction was not limited by 8 U.S.C. § 1105a(a). After a lengthy discussion of prior decisions on this issue, the court stated:

Although the INS argues that *Mondragon* is clearly wrong, we are bound by its authority.

Accordingly, we accept the *Marcello* reasoning and affirm the district court's decision that it had jurisdiction over this petition for a writ of habeas corpus. We do this without the conviction that attends a holding deemed unquestionably correct. The *Daneshvar v. Chauvin* result has much to commend it. It is for others, however, to set us on that particular course.

795 F.2d at 745 (footnote omitted).

October 13, 1989, Petitioner's wife was pregnant with their second child and was due to deliver on November 23, 1989.

Petitioner has been detained at the INS Service Process Center in Boston since he surrendered himself on September 6, 1994, after the BIA dismissed his appeal. From March of 1991 to September 6, 1994, Petitioner lived with his wife in Tampa, Florida. From 1974 to March of 1991, Petitioner lived in Fall River, Massachusetts. Although Petitioner claimed to have lived with his wife at the time of the original deportation hearing, (A.R. at 84, 101), Petitioner's wife stated that she lived with her mother and that Petitioner sometimes spent the night, (A.R. at 62, 64–65). Petitioner claims he has no family in Portugal at this time. (A.R. at 85).

Petitioner has a lengthy criminal history dating from 1979 to 1990. (A.R. at 160–167) (Respondent has not provided any evidence of additional criminal activity). Petitioner was *convicted* of the following charges: larceny (1979), attempted breaking and entering (1980), assault and battery on a police officer (1980), assault with a dangerous weapon (1981), operating a motor vehicle to endanger lives and safety (1981), assault and battery (1981), armed robbery (1984), armed robbery (1984), shoplifting (1988), larceny (1988), interfering with a police officer (1990), and operating a motor vehicle after license suspended (1991). (A.R. at 160–167) (dates used above are dates of final disposition). Petitioner was found to be *not guilty* of three charges: shoplifting (1988) (A.R. at 160–161), possession of class A controlled substance (1988) (A.R. at 161), and possession of burglarious tools (1979) (A.R. at 164). Fifteen criminal charges were "filed." (A.R. at 161–164). Two charges were nolle prossed: assault and battery on police officer (1990) (A.R. at 161) and possession of a firearm (1984) (A.R. at 163). Petitioner violated parole approximately one year before his deportation hearing. (A.R. at 82–83). He also defaulted on his armed robbery charge. (A.R. at 110).

At his deportation hearing, Petitioner claimed to have been factually innocent of one armed robbery conviction, to which he had pled guilty, (A.R. at 88–91), but conceded he had driven the alleged perpetrator away from the scene of the crime with knowledge that a robbery had just been committed. (A.R. at 110–11). Petitioner also admitted that he committed one armed robbery, in part to obtain money to buy drugs. (A.R. at 112). He admitted to having used heroin as recently as 1½ years before the deportation hearing. (A.R. at 95). He admitted to using heroin when he was arrested for drug crimes on several occasions, but claimed the police did not know at the time. (A.R. at 95–96, 109–110).

Petitioner has a Ninth Grade education and a welding certificate. (A.R. at 104–105). He started but did not complete a prison GED program. (A.R. at 105). At the time of the deportation hearing, he had been employed as a carpenter for Machado Realty and Construction for approximately one year, with a three month interruption while he was incarcerated for violating parole. (A.R. at 15–18). Prior to that, Petitioner worked for Consolidated Thread; for Johnson Landscape; and as a presser for a clothing manufacturer. (A.R. at 18–19). Until September 6, 1994, he was employed as a baker in Tampa Florida. (A.R. at 48).

At his 1989 deportation hearing, Petitioner claimed to be earning approximately $220 to $230 per week as a carpenter. (A.R. at 104). He admitted that he was paid in cash "under the table" and that he had not paid taxes on that income. (A.R. at 102–04). He made statements indicating that he was defrauding the welfare office. (A.R. at 102–104, 154–158). Petitioner's wife, who was on welfare, also indicated that Petitioner was not adequately supporting their son because he was paying her only $20 to $30 per week from his earnings. (A.R. at 131–132).

## IV. *Review of Denial of Stay of Deportation*

A deportation order is not stayed automatically while a motion to reopen or an appeal to the BIA is pending. *See* 8 C.F.R. § 103.5(a)(1)(iv), § 242.22, and § 3.6(b). And, if Petitioner is deported, his appeal to the BIA will be dismissed. *See* 8 U.S.C. § 1105a(c) (1988): "An order of deportation or of exclusion shall not be reviewed by any court if the alien ... has departed the Unit-

ed States after the issuance of the order."[7] *See also* 8 C.F.R. § 3.4 ("Departure from the United States of a person who is the subject to [sic] deportation proceedings subsequent to the taking of an appeal but prior to a decision thereon shall constitute a withdrawal of the appeal, and the initial decision in the case shall be final to the same extent as though no appeal had been taken."); 8 C.F.R. § 3.2 ("Any departure from the United States of a person who is the subject of deportation proceedings occurring after the making of a motion to reopen or a motion to reconsider shall constitute a withdrawal of such motion.").

■ INS regulations provide that: "The district director, in his discretion, may grant a stay of deportation for such time and under such conditions as he may deem appropriate." 8 C.F.R. § 243.4. Respondent's decision to deny Petitioner's request for a stay of deportation is subject to the deferential "abuse of discretion" standard of review. *See Caporali v. Whelan*, 582 F.Supp. 217, 219 (D.Mass.1984); *Bartholomeu v. District Director*, 487 F.Supp. 315, 321 (D.Md.1980). Respondent's decision may be overridden only if it was "without reasonable foundation" in fact. *United States ex rel. Barbour v. District Director of INS*, 491 F.2d 573, 577–78 (5th Cir.), *cert. denied*, 419 U.S. 873, 95 S.Ct. 135, 42 L.Ed.2d 113 (1974).

In order to determine whether Respondent's denial of a stay constituted an abuse of discretion, I must engage in several different levels of analysis. In particular, I must decide whether Petitioner's pending appeal to the BIA is of such merit that it should not be allowed to lapse as a result of Petitioner's deportation. The answer to this question turns on whether Petitioner has made a sufficiently strong argument that his "ineffective assistance of counsel" claim should have been upheld by Immigration Judge Sheppard. In other words, if Petitioner has a *reasonable* claim that his constitutional right to due process would be frustrated were he to be deported prior to a BIA decision on his Motion to Reopen, then Respondent's denial of a stay of deportation would constitute an abuse of discretion. *Cf. Blancada v. Turnage*, 891 F.2d 688 (9th Cir.1989) (holding motion to reopen involved nonfrivolous constitutional challenge to deportation order and thus district director abused discretion in denying stay); *Castaneda–Suarez v. INS*, 993 F.2d 142 (7th Cir.1993) (issuing stay of deportation order pending BIA decision on ineffective assistance of counsel claim); *Arango–Arandondo v. INS*, 13 F.3d 610, 615 (2d Cir.1994) (granting 60–day stay of deportation to allow filing of motion to reopen with BIA based on ineffective assistance of counsel claim).

A. *Immigration Judge Sheppard's Denial of Motion to Reopen Based on "Ineffective Assistance of Counsel"*

■ Whether to reopen a deportation order is fundamentally a discretionary decision. *INS v. Doherty*, 502 U.S. 314, 323, 112 S.Ct. 719, 724, 116 L.Ed.2d 823 (1992); *INS v. Rios–Pineda*, 471 U.S. 444, 449, 105 S.Ct. 2098, 2102, 85 L.Ed.2d 452 (1985); *INS v. Phinpathya*, 464 U.S. 183, 188 n. 6, 104 S.Ct. 584, 588 n. 6, 78 L.Ed.2d 401 (1984); *Williams v. INS*, 773 F.2d 8, 9 (1st Cir.1985); *cf. Gebremichael v. INS*, 10 F.3d 28, 34 n. 17

7. There is a split among the circuits concerning the scope of Section 1105a(c). Several circuits have held that Section 1105a(c) allows judicial review where the departure was not "legally executed" or where the alien has a colorable due process claim. *See Mendez v. INS*, 563 F.2d 956, 958 (9th Cir.1977) (holding judicial review available where alien's counsel did not receive notice prior to deportation) (Supreme Court reserved judgment on *Mendez* in *United States v. Mendoza–Lopez*, 481 U.S. 828, 837 n. 13, 107 S.Ct. 2148, 2154 n. 13, 95 L.Ed.2d 772 (1987)); *Thorsteinsson v. INS*, 724 F.2d 1365, 1367 (9th Cir. 1984) (ineffective assistance of counsel claim reviewed), *cert. denied*, 467 U.S. 1205, 104 S.Ct. 2386, 81 L.Ed.2d 345 (1984); *Estrada–Rosales v. INS*, 645 F.2d 819 (9th Cir.1981) (deportation based on invalid conviction did not preclude review); *Juarez v. INS*, 732 F.2d 58, 59–60 (6th Cir.1984); *Camacho–Bordes v. INS*, 33 F.3d 26 (8th Cir.1994) (finding jurisdiction after deportation if record reveals colorable due process claim); *Marrero v. INS*, 990 F.2d 772 (3d Cir. 1993) (same). Other circuits have taken the opposite position. *See Umanzor v. Lambert*, 782 F.2d 1299 (5th Cir.1986) (holding district court lacked jurisdiction once alien was deported); *Roldan v. Racette*, 984 F.2d 85, 90 (2d Cir.1993) (same); *Saadi v. INS*, 912 F.2d 428 (10th Cir. 1990) (same) (per curiam). The First Circuit has not yet spoken on this issue. For purposes of this memorandum, I will assume that judicial review of Petitioner's conviction will not be available once he is deported.

88

(1st Cir.1993) (normal standard of review is abuse of discretion but agency determinations of statutory eligibility must be supported by substantial evidence). A party seeking to reopen bears a "heavy burden." *INS v. Abudu,* 485 U.S. 94, 110, 108 S.Ct. 904, 915, 99 L.Ed.2d 90 (1988). As the Supreme Court has explained:

> Motions for reopening of immigration proceedings are disfavored for the same reasons as are petitions for rehearing, and motions for a new trial on the basis of newly discovered evidence. This is especially true in a deportation proceeding where, as a general matter, every delay works to the advantage of the deportable alien who wishes merely to remain in the United States.

*INS v. Doherty,* 502 U.S. at 323, 112 S.Ct. at 724–725 (citations omitted). Thus, Petitioner must show that Immigration Judge Sheppard abused her discretion in denying Petitioner's motion to reopen. *Cf. Caporali v. Whelan,* 582 F.Supp. 217, 219 (D.Mass.1984).

Immigration Judge Sheppard offered two reasons for her denial of Petitioner's motion to reopen. First, that Petitioner failed to comply with the procedural requirements set forth in *Matter of Lozada,* 19 I & N Dec. 637 (BIA 1988), *aff'd,* 857 F.2d 10 (1st Cir.1988). (A.R. at 4–6). Second, that Petitioner failed to establish any prejudice resulted from Attorney Scheinman's alleged errors because "the portions of the transcript submitted in support of [Petitioner's] motion reflect the Immigration Judge's diligence in assuring that all evidence relevant to [Petitioner's] 212(c) claim was addressed." (A.R. at 6). I find that Petitioner's motion to reopen, when combined with the administrative record available to Immigration Judge Sheppard on September 9, 1994, complied with the *Lozada* requirements. And while I agree that Petitioner failed to show he was denied a fair hearing as a result of Attorney Scheinman's hearing-related errors, I also find that Attorney Scheinman's ineffectiveness deprived Petitioner of his right to an appeal on the merits.

1. *Procedural Requirements*

█ Immigration Judge Sheppard correctly noted that Petitioner had to comply with certain procedures before the merits of his "ineffective assistance of counsel" claim would be reached. 8 C.F.R. § 103.5 (West 1994) requires that a motion to reopen: "(i) State the new facts to be proved at the reopened proceeding; and (ii) Be supported by affidavits or other documentary evidence."

There is no question that Petitioner satisfied these requirements. However, in *Matter of Lozada,* 19 I & N Dec. 637 (BIA 1988), *aff'd,* 857 F.2d 10 (1st Cir.1988), the Board of Immigration Appeals announced new, and stricter, requirements for motions to reopen or reconsider based upon allegations of ineffective assistance of counsel.

> A motion based upon a claim of ineffective assistance of counsel should be supported by an affidavit of the allegedly aggrieved respondent attesting to the relevant facts. In the case before us, that affidavit should include *a statement that sets forth in detail the agreement that was entered into with former counsel with respect to the actions to be taken on appeal and what counsel did or did not represent to the respondent in this regard.* Furthermore, before allegations of ineffective assistance of former counsel are presented to the Board, former counsel must be informed of the allegations and allowed the opportunity to respond. Any subsequent response from counsel, or report of counsel's failure or refusal to respond, should be submitted with the motion. Finally, if it is asserted that prior counsel's handling of the case involved a violation of ethical or legal responsibilities, the motion should reflect whether a complaint has been filed with appropriate disciplinary authorities regarding such representation, and if not, why not.

*Id.* at 639 (emphasis added). The BIA explained that "[t]he high standard announced here is necessary if we are to have a basis for assessing the substantial number of claims of ineffective assistance of counsel that come before the Board. Where essential information is lacking, it is impossible to evaluate the substance of such claim." *Id.*

Because Attorney Scheinman died in 1992, only the first requirement of *Lozada* is applicable, i.e., Petitioner had to submit an affidavit attesting to the relevant facts. Immigration Judge Sheppard concluded that Petitioner had not met this requirement.

In his Affidavit,[8] Petitioner stated that he engaged Attorney Scheinman to represent him "in deportation proceedings," and that he "relied on [Attorney Scheinman] to prepare and file with the Immigration and Naturalization Service all documents necessary for [his] 212(c) hearing and appeal, if required, and to represent [him] at the 212(c) hearing and to submit whatever briefs were required for any appeal." (A.R. at 46–47). Immigration Judge Sheppard concluded that these allegations alone were insufficient to establish that Attorney Scheinman had agreed to represent Petitioner on appeal prior to the filing deadline on January 29, 1994. (A.R. at 7).

Immigration Judge Sheppard also relied on a submission from Petitioner. As part of his proof of an agreement with Attorney Scheinman, Petitioner offered a copy of a handwritten note, signed by Attorney Scheinman and dated May 17, 1989. The text of the note is as follows:

> I, M. David Scheinman, do hereby agree to represent Antonio J. Motta in his Immigration Deportation case in Boston for the total sum of $5,000.00 receipt of which is hereby acknowledged which will be full payment except in case an appeal is taken.

(A.R. at 18).

Respondent contends, and Immigration Judge Sheppard agreed, that this document "explicitly declares that representation upon appeal was *not* a feature of the agreement." (Def. Mem. in Support of Def. Motion to Dismiss, at 17).

INS counsel also asserted in their Memorandum to Immigration Judge Sheppard that: "No evidence indicates when the agreement on appeal was finally reached." (A.R. at 8). This assertion was apparently relied on by Immigration Judge Sheppard in her decision, where she stated: "The Service notes that in fact the only historical evidence of record explicitly declares that representation upon appeal was not a feature of the agreement." (A.R. at 4).

That conclusion is understandable, albeit mistaken, given that Petitioner did not direct Immigration Judge Sheppard's attention to a copy of Attorney Scheinman's appeal form. On its face, the appeal form shows that Attorney Scheinman began preparing the form on January 23, 1990, completed the form on January 29, 1990, and certified service of the form by mail on opposing counsel the same day. Attorney Scheinman did not file the form in Massachusetts until February 21, 1990, however. Petitioner's failure to call attention to this fact is excusable if, as appears likely, he did not have a copy of the original appeal form. In any event, the form provides "other documentary evidence" of record supporting Petitioner's declaration.

 Once the appeal form is considered, it becomes clear that Attorney Scheinman was representing Petitioner on appeal as of January 23, 1990. The possibility that Attorney Scheinman may have been dissatisfied with his fee arrangement at that time is not a legitimate excuse for his failure to file the appeal form until February 21, 1990. Once appellate representation has been undertaken, an attorney does not have the option of doing a wholly inadequate job even if he considers his fee to be inadequate. Although one may speculate that an attorney's agreement to represent his client on appeal does not include an agreement to file a brief, as did the Board of Immigration Appeals in

---

**8.** Petitioner signed his "Affidavit" immediately below the following text: "SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 5TH DAY OF SEPTEMBER, 1994." Pursuant to 28 U.S.C. § 1746 (West 1994), this type of unsworn declaration may substitute, "with like force and effect," for a sworn declaration, oath, or affidavit. *See also* Fed.R.Civ.P. 43(d) (West 1994) ("Whenever under these rules an oath is required to be taken, a solemn affirmation may

be accepted in lieu thereof."); Mass.R.Civ.P. 43(d) (West 1994) ("Whenever under these rules an oath is required to be taken, a solemn affirmation under the penalties of perjury may be accepted in lieu thereof."). Since 8 C.F.R. § 103.5, allows a motion to reopen to be supported by affidavit or by "other documentary evidence," there is no reason to read *Lozada* to mandate that only sworn affidavits be accepted as proof of a representation agreement.

*Matter of Lozada,* 19 I & N Dec. 637 (BIA 1988), *aff'd,* 857 F.2d 10 (1st Cir.1988), it strains the customary concepts of effective representation to suggest that appellate representation could include preparing the appeal form, serving it on opposing counsel, but not filing it until almost a month after the deadline had expired, particularly after having been informed of the deadline both orally and in writing.

As additional support for the contention that Attorney Scheinman did not originally agree to represent Petitioner on appeal, Respondent notes that Attorney Scheinman told Immigration Judge Bagley that he would "have to speak to" Petitioner before stating whether Petitioner had reserved his right to appeal. (Def. Mem. in Support of Def. Motion to Dismiss, at 18). To be sure, the exchange indicates that Attorney Scheinman was initially reluctant to initiate an appeal without Petitioner's approval and, presumably, Petitioner's fee. The copy of the appeal form shows, however, that Attorney Scheinman had agreed to undertake the appeal, and had completed and served the form, as of January 29, 1990. As of that day at the latest, he had a duty to file the form with the BIA. If he had done so, Petitioner's appeal would not have been untimely.

Attorney Scheinman's semi-retired status is the apparent explanation for his failure to file the appeal form on January 29, 1990, when he completed it and served it by mail on opposing counsel. Attorney Scheinman presumably was in Florida at the time, as the following exchange between Immigration Judge Bagley and Attorney Scheinman at the initial hearing anticipates:

[Immigration Judge Bagley]. And I'll tell you the date for the decision now. You're going to Florida?

[Attorney Scheinman]. Yes.

Q. What, for a trip?

A. Well, I have a place down there that I live there in the wintertime. I have a folio, and I have an active practice in New Bedford.

(A.R. at 138). On January 19, 1990, when Immigration Judge Bagley rendered his decision by telephone to Attorney Scheinman, Attorney Scheinman was located in Boca Raton, which was "about 50 miles" from the INS office where the appeal forms were located. (A.R. at 82). That Attorney Scheinman was in Florida for the winter, according to his established practice, in January of 1990, provides an explanation, if not a justification, for why he would not file the appeal in Massachusetts until February of 1990.

Under the circumstances, I find that Immigration Judge Sheppard was in error when she concluded that Petitioner had not complied with the procedural requirements of *Lozada.* I now turn to the merits of Petitioner's "ineffective assistance of counsel" claim.

### 2. *"Ineffective Assistance of Counsel" Claim*

In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court established the standard for evaluating ineffective assistance of counsel claims based on the Sixth Amendment right to counsel in criminal cases:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

466 U.S. at 687, 104 S.Ct. at 2064. The Court explained that: "In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." 466 U.S. at 688, 104 S.Ct. at 2065. In particular, "[j]udicial scrutiny of counsel's performance must be highly deferential." 466 U.S. at 689, 104 S.Ct. at 2065.

Because deportation proceedings are civil rather than criminal, the Sixth Amendment right to counsel does not apply. *Lozada v. INS,* 857 F.2d 10, 13 (1st Cir.1988); *cf. Landon v. Plasencia,* 459 U.S. 21, 103 S.Ct.

321, 74 L.Ed.2d 21 (1982) (holding that INS could hold exclusion hearing rather than deportation hearing for permanent resident alien denied admission after a brief visit to Mexico that involved attempt to smuggle aliens). Nevertheless, "counsel at a deportation hearing may be 'so ineffective as to have impinged upon the fundamental fairness of the hearing in violation of the fifth amendment due process clause.'" *Castaneda–Suarez v. INS*, 993 F.2d 142, 144 (7th Cir.1993) (quoting *Magallanes–Damian v. INS*, 783 F.2d 931, 933 (9th Cir.1986)). Thus, although the *Strickland* standard provides a serviceable starting point for analysis of whether Attorney Scheinman was ineffective, my inquiry must focus on the fairness of the procedures afforded Petitioner.

The Supreme Court noted in *Landon*, "[i]f the exclusion hearing is to ensure fairness, it must provide [the alien] an opportunity to present her case effectively, though at the same time it cannot impose an undue burden on the government." 459 U.S. at 36, 103 S.Ct. at 331. The Due Process Clause will be violated only if "'the proceeding was so fundamentally unfair that the alien was prevented from reasonably presenting his case.'" *Lozada*, 857 F.2d at 13 (citation omitted).

In his submissions to Immigration Judge Sheppard, Petitioner pointed to numerous errors committed by Attorney Scheinman during the deportation proceedings. (A.R. at 12–13, 15, 26–28). Because of Immigration Judge Bagley's careful and conscientious efforts, however, none of these errors may be said to have deprived Petitioner of a fundamentally fair deportation hearing. If Petitioner is deported immediately, however, Attorney Scheinman's failure to file an appeal in a timely manner will have prevented Petitioner from having the BIA consider his appeal on the merits and consequently have prevented him from fully presenting his case.

To explain this determination, I now address Attorney Scheinman's alleged errors, and their probable effects, for each phase of the deportation proceeding.

■ (a) *Preparation for the Hearing:* Petitioner states, correctly, that Attorney Scheinman did not properly prepare and file Petitioner's Application for Advanced Permission to Return to Unrelinquished Domicile (Form I–191). Attorney Scheinman did not list the criminal convictions for which waiver was requested. He did not pay the application fee at the District Office in advance. He erroneously indicated that Petitioner's wife was a citizen of Portugal rather than of the United States. Finally, he failed to list all of Petitioner's family members. These errors were corrected before the decision was rendered, however. (A.R. at 69–70 (on July 24, 1989 judge instructs Attorney Scheinman to pay filing fee before October 13, 1989 hearing), 72–73 (Attorney Scheinman informs judge of Mrs. Motta's citizenship), 153 (judge accepts that Mrs. Motta is a U.S. citizen), 84–86 (judge is informed of Petitioner's other family members), 154 (judge accepts that other family members are lawful permanent residents of the United States), 105–106, 141–142 (judge receives Petitioner's FBI Identification Record, record from the Massachusetts Criminal History Systems Board, and Bristol County Superior Court Probation Office record)).

Petitioner also alleges that Attorney Scheinman did not properly prepare him for the hearing, in that Petitioner claims he was not told to bring: "marriage and birth certificates of U.S. citizen children; Income tax returns for the last seven years; school records; affidavits of family members as to dependency, support and hardships; Evidence of community service, church activity, charity work; Evidence of military service; FICA earnings statement; Prison records; Evidence of accomplishments or classes or programs completed in prison; Certificates of achievements; Letter from probation offices and Pre-sentence report (if available)." (A.R. at 15). In fact, the record reflects that Petitioner did bring his marriage certificate, (A.R. at 77), a birth certificate for the only child who had been born at the time of the hearing, (A.R. at 79), and a letter from the clinic where Petitioner was receiving methadone treatment, (A.R. at 107–108, 154). Petitioner also was able to discuss his educational history during the hearing. (A.R. at 104–105). Since Petitioner did not offer copies of any of the other documents he lists to Immigration Judge Sheppard, there was no reason

for her to assume that, if provided at the hearing, these documents would have influenced Immigration Judge Bagley's decision in Petitioner's favor.

■ (b) *Conduct of the Hearing:* Petitioner correctly notes that Attorney Scheinman did not provide copies of exhibits to opposing counsel, as was required. (A.R. at 77–78). Nor did Attorney Scheinman obtain Petitioner's criminal records, as was his duty. (A.R. at 105–107). Immigration Judge Bagley, however, went to great lengths to remedy these errors by offering to make copies for INS counsel, (A.R. at 13), and by receiving Petitioner's criminal records from INS counsel after giving Attorney Scheinman and Petitioner the opportunity to inspect and object to these records, (A.R. at 105–107, 141–142). At that time, Petitioner stated that he had a copy of his record. (A.R. at 106).

I am troubled by Attorney Scheinman's failure to inspect Petitioner's criminal records and object to the inclusion of certain items. The following exchanges will illustrate the problem. At the conclusion of the deportation hearing on October 13, 1989, Immigration Judge Bagley asked INS counsel to provide him with copies of Petitioner's criminal records. He then discussed the importance of these records with Attorney Scheinman:

[Immigration Judge Bagley]. Unless you have some objection, I'm going to ask that if you have any objection to the admission of these documents into the record as Group Exhibit 10, that you let me know before the decision.

A. I have no objections.

Q. I don't know what they have to present at this point. I haven't seen the documents. I don't know ... .

A. Well, I haven't seen them either, but I know you want to see everything you can see in order to make a decision. And I surely wouldn't stand in your way to do that, Your Honor. I try to be very fair about it, as you can see.

Q. Yes, I agree. No question. I'm going to then set this matter down for a hearing. You have no objection to these documents coming into the record directly from the trial attorney, and they will be Group Exhibit 10 then.

A. Yes.

(A.R. at 137–138) (October 13, 1989 hearing).

When Petitioner's criminal records were presented at the hearing on January 19, 1990, Immigration Judge Bagley again gave Attorney Scheinman the opportunity to object to their contents. Attorney Scheinman first stated that he had no objection. (A.R. at 77–78). Then he informed the court that he had not even received copies of the documents. (A.R. at 78). Since he was not physically present at the hearing (he was calling from Boca Raton, Florida, (A.R. at 141) this meant that he never inspected the documents. Immigration Judge Bagley asked Attorney Scheinman, for the third time, whether he wanted to object to the records:

Q. If you wish to object to the documents, I'll be willing to consider that objection.

A. Well, it all depends on the results. If the results are favorable, of course, I won't object.

Q. The results of what?

A. Of your decision.

Q. Well, I have to know at this point if you're objecting to the documents.

A. Well, I don't want to delay this matter any more than I have to, so I'll go ahead and I'll agree to it.

Q. You'll agree to the admission of the documents into the record?

A. Yes.

Q. All right.

(A.R. at 144–145).

Unless Attorney Scheinman had obtained the documents himself after the October 13, 1989 hearing and before the January 19, 1990 hearing, which seems unlikely from the tone of the discussions, Attorney Scheinman's failure to inspect the records and object to certain items therein appears to have been a serious error rather than a reasonable tactical decision. Indeed, his assumption that it would be possible to object to the admission of evidence *after* the decision had been rendered is difficult to credit.

The Fifth Amendment, like the Sixth Amendment, is not automatically violated by serious attorney errors, however. *Cf. Scarpa v. DuBois*, 38 F.3d 1 (1st Cir.1994); *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."). Petitioner also must show that Attorney Scheinman's errors deprived him of a fundamentally fair hearing. This depends on whether Petitioner's criminal records were used improperly by Immigration Judge Bagley. Of particular concern are the criminal charges to which there was a disposition of "not guilty," (A.R. at 160–161 (shoplifting in 1988 and possession of class A controlled substance in 1988), and 164 (possession of burglarious tools in 1979)), and the fifteen criminal charges that were "filed," (A.R. at 161–164).[9] In addition, the FBI Interstate Identification Index lists several arrests, but only two dispositions.

◼ Although the normal rules of evidence do not apply to deportation hearings,[10] due process requires that only probative evidence whose use is fundamentally fair may be admitted. *See Bustos–Torres v. INS*, 898 F.2d 1053, 1055 (5th Cir.1990) (and citations therein). However, an Immigration Judge may consider "any evidence of bad character or undesirability as a permanent resident."

*White v. INS*, 17 F.3d at 480. An Immigration Judge must determine whether to grant Section 212(c) relief "based on all the facts and circumstances of a particular case, taking into account the social and humane considerations presented in an applicant's favor and balancing them against the adverse factors that evidence the applicant's undesirability as a permanent resident." · *Paredes–Urrestarazu v. INS*, 36 F.3d 801, 806 (9th Cir. 1994) (citation omitted) (holding that BIA need not give effect to state pretrial diversion scheme that allowed alien to expunge arrest from record). *See also Matter of Marin*, 16 I & N Dec. 581 (BIA 1978) (describing balancing of favorable and adverse considerations that must be undertaken). In any event, there is no indication here that Immigration Judge Bagley gave undue weight to the "filed" charges. In fact, Immigration Judge Bagley apparently characterized them as "dismissed." (A.R. at 157).[11]

On the record before me, I cannot say that Attorney Scheinman's errors either affected the result of the deportation hearing or deprived Petitioner of the chance to present his case reasonably at the deportation hearing. This is largely because Immigration Judge Bagley was quite careful to compensate for Attorney Scheinman's mistakes. Even excluding the charges for which Petitioner was found "not guilty" and the "filed" charges, Petitioner's admitted criminal activities offer

---

9. In Massachusetts, "filing" a charge means that the adjudicative process, including the defendant's right to appeal, is suspended until such time as the court reactivates the case, or disposes of it in some other way. *See White v. INS*, 17 F.3d 475, 479 (1st Cir.1994) (holding trial court erred in treating "filed" drug and weapons charges as convictions, but error was harmless). *Cf. United States v. Roberts*, 39 F.3d 10, 13 (1st Cir.1994) (noting the need for careful examination of Massachusetts procedures for diversionary dispositions).

10. *See* 5 U.S.C. § 556(d) (1988) ("Any oral or documentary evidence may be received, but the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence.").

11. Immigration Judge Bagley's use of the 1988 narcotics charge, to which there was a "not guilty" disposition, is not clear from the record. In his oral decision, Immigration Judge Bagley stated "[Petitioner] also claims that he was twice arrested for possession of heroin, but that these

·charges were dismissed." (A.R. at 155). The criminal records partly corroborate Petitioner's claim because of the disposition of "not guilty" to the 1988 charge of possession of a class A controlled substance. *Cf.* Mass.Gen.L. ch. 94C, § 31(10) (West 1994) (classifying heroin as a class A controlled substance). On the other hand, the criminal records show Petitioner was arrested in 1987 for possession *with intent to deliver* heroin, (A.R. at 167), without indicating the disposition. The records also show that a 1983 charge of conspiracy to violate the Controlled Substance Act was filed in 1984, (A.R. at 163), and that a 1984 charge of possession of a class D controlled substance was filed the same year, (A.R. at 161). Nothing in Immigration Judge Bagley's failure to sort through Petitioner's complex arrest history in greater detail or his characterization of Petitioner's statements as "claims," however, suggests that the arrests and not guilty dispositions played a material role in his decision.

sufficient justification for Immigration Judge Bagley's denial of a waiver of deportability. Petitioner admitted that he committed armed robbery, in part to obtain money to buy drugs. (A.R. at 112). He admitted to having used heroin as recently as 1½ years before the deportation hearing. (A.R. at 95). Petitioner indicated that he may have committed welfare and tax crimes. (A.R. at 102–104, 154–158). According to his wife's testimony, Petitioner was not adequately supporting his son from his wages. (A.R. at 131–132). Petitioner also violated parole approximately one year before his deportation hearing. (A.R. at 82–83). He defaulted on his armed robbery charge. (A.R. at 110). Even balancing the factors that might be strained to favor Petitioner, such as family ties and employment, against these adverse factors, it is clear that Immigration Judge Bagley's refusal to grant a discretionary waiver of deportation was both reasonable and fair. (A.R. at 152–158). Thus, I find no due process violation in the conduct of the deportation hearing.

■■■ (c) *Filing of the Appeal:* Petitioner's most compelling example of ineffective representation by Attorney Scheinman is the untimely filing of the appeal to the BIA on February 21, 1990. (A.R. at 47). As discussed in Section A(1), *supra,* the fact that Attorney Scheinman was in Florida for the "wintertime," according to his usual practice, does not excuse the delay in filing the appeal. This late filing "fell below an objective standard of reasonableness." *See Strickland,* 466 U.S. at 688, 104 S.Ct. at 2065; *cf. In re DeConcilis,* 119 B.R. 880, 882 n. 1 (Bankr. D.R.I.1990) (imposing sanctions on counsel for failing to provide discovery, in part because of vacation plans); *Damiani v. Rhode Island Hospital,* 704 F.2d 12, 16 (1st Cir. 1983) (affirming dismissal of antitrust suit as sanction for failure to comply with discovery order) ("The day has long since passed when we can indulge lawyers the luxury of conducting lawsuits in a manner and at a pace that best suits their convenience."). With respect to Petitioner's appeal, Attorney Scheinman's error was so serious that, as to appeal, he was not functioning as "counsel." His untimely filing of the appeal form did not fall within the "wide range of reasonable

professional assistance." *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

The next step is to ask whether Petitioner has shown prejudice resulted from Attorney Scheinman's error. Because the BIA based its decision to dismiss Petitioner's appeal solely on the fact that the appeal had been untimely filed, (A.R. at 53), Attorney Scheinman's error deprived Petitioner of his chance to have the BIA review the merits of his case and grant a discretionary waiver of deportation. Thus, Petitioner has demonstrated he was deprived of the opportunity to present his case on appeal at all. I have already found, however, that Petitioner received a full and fair hearing by Immigration Judge Bagley. In addition, Petitioner has no Sixth Amendment right to counsel in a deportation proceeding. Instead, he has a Fifth Amendment right to due process. Thus, I must determine whether, under these circumstances, the loss of an administrative right to appeal in a deportation proceeding, as a result of attorney error, may constitute a denial of due process without a showing of a reasonable probability of success on appeal.

In *Lozada,* 857 F.2d at 13, the First Circuit held that the BIA may summarily dismiss an appeal that fails to comply with 8 C.F.R. § 3.1(d)(1–a)(i). The court's opinion implies that Petitioner has no due process right to a BIA appeal. The First Circuit did not decide the issue, however. It expressly stated:

> Even if we assumed that former counsel's failure initially to secure full review by the Board was so harmful as to have caused a denial of due process had the proceedings stopped at that point, the Board's careful attention to petitioner's motion to reopen deportation proceedings negated any possible violation.

857 F.2d at 14; *see also De Oliveira Moura v. INS,* 32 F.3d 561, No. 93–2393, 1994 WL 440657, *2 (1st Cir.1994) (unpublished disposition) ("Although the BIA noted that Moura's counsel had failed to file a brief, it reviewed the record in its entirety and found that the Immigration Judge had properly weighed all relevant factors in denying Moura's application."); *Mantell v. United*

*States Dep't of Justice, INS,* 798 F.2d 124, 128 (5th Cir.1986) ("notwithstanding counsel's neglect in alerting the Immigration Judge of Mantell's prior military service, Mantell received a decision on the merits of his claim from the BIA and was not prejudiced by his counsel's oversight") (footnote omitted); *Ramirez–Durazo v. INS,* 794 F.2d 491, 500–01 (9th Cir.1986) (no showing of prejudice from counsel's failure to file a brief on appeal where BIA "considered the merits of the case and fully reviewed the record" and there was "no indication that anything added in a brief could have affected the final result"); *Arevalo–Figueroa v. INS,* 28 F.3d 104, No. 92–70736, 1994 WL 201187 (9th Cir.1994) (unpublished disposition) ("Because the BIA reviewed counsel's substantive arguments and concluded that the immigration judge did not err, Arevalo–Figueroa suffered no prejudice by the absence of counsel on appeal."). In this case, the BIA did not review the merits of Petitioner's claims. *Compare Lozada,* 19 I & N Dec. at 640 *with* A.R. at 53. Thus, *Lozada* does not resolve the issue.

Another First Circuit opinion relied upon by Respondent, *United States v. Vieira–Candelario,* 6 F.3d 12 (1st Cir.1993), also is not dispositive. In *Vieira–Candelario,* the court held that an Immigration Judge's erroneous failure to inform the respondent of his right to apply for discretionary relief under Section 212(c) did not violate his right to due process. Vieira–Candelario filed a notice of appeal and then deliberately withdrew the appeal. 6 F.3d at 15. *Cf. United States v. Smith,* 14 F.3d 662, 664–65 (1st Cir.1994) (finding no due process violation where defendant withdrew his appeal). Unlike Vieira–Candelario and Smith, Petitioner did not withdraw his appeal to the BIA.

In a case that also involved the BIA's summary dismissal of an appeal that was not timely filed, the Ninth Circuit recently held that regulations for filing notices of appeal violated a petitioner's right of due process. *Gonzalez–Julio v. INS,* 34 F.3d 820 (9th Cir.1994). In *Gonzalez–Julio,* however, the court did not engage in a lengthy analysis of whether a due process right to appeal to the BIA actually existed because "[t]he government d[id] not dispute that the right to file

an appeal is protected by the Due Process Clause. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 428, 102 S.Ct. 1148, 1153, 71 L.Ed.2d 265 (1982) (a cause of action is 'property' protected under the Due Process Clause)...." 34 F.3d at 823 (some citations omitted).

For state criminal cases, the Supreme Court has held that, although there is no constitutional right to an appeal, *McKane v. Durston,* 153 U.S. 684, 14 S.Ct. 913, 38 L.Ed. 867 (1894), if a State decides to confer such a right, a criminal defendant is entitled to effective assistance of counsel on that appeal. *Evitts v. Lucey,* 469 U.S. 387, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985). This proposition is relevant because 8 C.F.R. § 3.1(b)(2) gave Petitioner the right to appeal Immigration Judge Bagley's decision to the Board of Immigration Appeals, and 8 U.S.C. § 1362 gave Petitioner the right to be represented by counsel on that appeal.

The First Circuit has held that prejudice is presumed where a criminal defendant is deprived of the right to an appeal due to dereliction of counsel in failing to file a brief or appendix after he had promised to do so. *Bonneau v. United States,* 961 F.2d 17 (1st Cir.1992). *See also Rodriquez v. United States,* 395 U.S. 327, 330, 89 S.Ct. 1715, 1717, 23 L.Ed.2d 340 (1969) ("Those whose right to appeal has been frustrated should be treated exactly like other appellants; they should not be given an additional hurdle to clear just because their rights were violated at some earlier stage in the proceedings.") (citation omitted); *Penson v. Ohio,* 488 U.S. 75, 88–89, 109 S.Ct. 346, 354–55, 102 L.Ed.2d 300 (1988) (holding that where appellate court decided merits of petitioner's appeal without appointing new counsel, it was "inappropriate to apply either the prejudice requirement of *Strickland,* or the harmless-error analysis of *Chapman*") (footnote omitted); *Castellanos v. United States,* 26 F.3d 717 (7th Cir.1994) (holding habeas corpus petitioners were not required to show probability of success on appeal to satisfy prejudice requirement of *Strickland* where defense counsel failed to perfect direct appeals).

The First Circuit distinguishes structural errors, such as the failure to perfect an appeal, for which prejudice is presumed because there was a "constructive absence of counsel," from serious "trial errors," such as the failure to prepare for trial, for which prejudice must be demonstrated. *See Scarpa v. DuBois*, 38 F.3d 1, 13–14, 16 n. 7 (1st Cir.1994) ("Of course, courts have not required a showing of prejudice when the attorney's inadequate performance completely denies the defendant his right to an appeal") (citations omitted); *cf. United States v. Cronic*, 466 U.S. 648, 662, 104 S.Ct. 2039, 2048, 80 L.Ed.2d 657 (1984) ("only when surrounding circumstances justify a presumption of ineffectiveness can a Sixth Amendment claim be sufficient without inquiry into counsel's actual performance at trial") (dictum) (footnote omitted).

Although cases such as *Bonneau* and *Scarpa* are not directly on point because there is no constitutional right to counsel in deportation hearings,[12] they cannot be dismissed out of hand, as Respondent suggests in his Memorandum, simply because deportation proceedings are not criminal proceedings. Deportation is a serious deprivation of rights protected by an elaborate scheme of procedural mechanisms. In *Woodby v. INS*, 385 U.S. 276, 87 S.Ct. 483, 17 L.Ed.2d 362 (1966), the Supreme Court held that the government must prove grounds for deportation by "clear, unequivocal, and convincing evidence" rather than by a preponderance of evidence. The Court explained:

To be sure, a deportation proceeding is not a criminal prosecution. But it does not syllogistically follow that a person may be banished from this country upon no higher degree of proof than applies in a negligence case. This Court has not closed its eyes to the drastic deprivations that may follow when a resident of this country is compelled by our Government to forsake all the bonds formed here and go to a foreign land where he often has no contemporary identification.

385 U.S. at 285, 87 S.Ct. at 488 (citation omitted). Similarly, in this case, it does not follow that a merits appeal of a deportation decision should be lost—unless the petitioner makes a preliminary showing of prejudice—when an attorney's inadequate performance completely frustrates prosecution of that appeal.

Respondent notes that in *De Oliveira Moura*, 1994 WL 440657, * 4, the First Circuit stated "[i]n due process challenges, there must always be a showing of prejudice," (quoting *Colindres–Aguilar v. INS*, 819 F.2d 259 (9th Cir.1987)). This statement should not be wrenched out of context, however. First, the BIA had considered De Oliveira Moura's case on the merits. *Id.* Second, as the Ninth Circuit expressly noted in *Colindres–Aguilar*, "it is unsettled whether there must be a showing of prejudice where, as in this case, counsel has been effectively denied." 819 F.2d at 261 (citation omitted).

Respondent, following the First Circuit in *De Oliveira Moura*, 1994 WL 440657 at *4,

12. In the immigration context, the Supreme Court has gone so far as to hold that there is a due process right to judicial review of a deportation order where that order is used to establish an element of a criminal offense. *United States v. Mendoza–Lopez*, 481 U.S. 828, 837–38, 107 S.Ct. 2148, 2154–55, 95 L.Ed.2d 772 (1987). The respondents in *Mendoza–Lopez* were charged with entering the United States after having been deported, in violation of 8 U.S.C. § 1326. They moved to dismiss their indictments on the ground that they had been denied due process at their original deportation hearing because the Immigration Judge did not properly inform them of their right to counsel and accepted their unknowing waivers of their right to apply for suspension of deportation. 481 U.S. at 830–32, 107 S.Ct. at 2151–52. The District Court granted their motion and the government appealed. The Eighth Circuit affirmed, as did the Supreme

Court. The Supreme Court noted that "where a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative proceeding." 481 U.S. at 837–38, 107 S.Ct. at 2154–55 (citations omitted). The Court continued, "at the very least[,] where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." 481 U.S. at 838, 107 S.Ct. at 2155 (footnote omitted). This review may be had in "any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense." *Id.* (footnote omitted).

also cites such cases as *Miranda–Lores v. INS,* 17 F.3d 84, 85 n. 2 (5th Cir.1994), *Figeroa v. INS,* 886 F.2d 76, 80 (4th Cir. 1989), and *Mohsseni Behbahani v. INS,* 796 F.2d 249, 251 (9th Cir.1986), as authority for a requirement that prejudice must be established, (Def. Second Supp. Mem. at 6). *See also United States v. Proa–Tovar,* 975 F.2d 592, 594 (9th Cir.1992) (en banc); *United States v. Espinoza–Farlo,* 34 F.3d 469 (7th Cir.1994); *Al–Jabi v. INS,* No. 93–3475, 28 F.3d 1213, 1994 WL 320369, **3 (6th Cir. 1994) (unpublished disposition). These cases also are distinguishable, however, because, in each case, the alien had not demonstrated that he was eligible for discretionary relief. Thus, as a matter of law, there was no possibility that prejudice could have resulted from the denial of additional review.

In this case, Petitioner was eligible for a discretionary waiver. *Cf. United States v. Castro,* 26 F.3d 557, 563 (5th Cir.1994) (distinguishing *Miranda–Lores* on the ground that "Miranda–Lores never alleged any facts that would have supported the discretionary grant of relief" while, in Castro's case, no one even considered the option of discretionary relief. "Thus, Castro need not show that he would have received said relief, but only that had such relief been requested, the court would have had the opportunity to exercise its discretion either to grant or to deny it and that there is a reasonable probability that the judge would have granted such relief."); *United States v. Santos–Vanegas,* 878 F.2d 247 (8th Cir.1989) (reversing conviction for unlawful reentry) (holding alien satisfied prejudice requirement for collateral attack on deportation order by showing that he might not have been deported if proper standard of review had been applied by BIA). Petitioner here had a right to appeal Immigration Judge Bagley's decision to the Board of Immigration Appeals, 8 C.F.R. § 3.1(b)(2), and to be represented by counsel on that appeal, 8 U.S.C. § 1362. I therefore find that Petitioner has made a reasonable showing that he would be denied due process if, as a result of Attorney Scheinman's error, he were to be deported before the BIA had the opportunity to review the merits of Immigration Judge Bagley's decision. *Cf. Gonzalez–Julio v. INS, supra.*

With this issue resolved, I turn to an examination of Respondent's denial of a stay of deportation pending the BIA's decision on Petitioner's Motion to Reopen.

## B. *Respondent's Denial of Stay of Deportation*

Respondent denied two separate requests by Petitioner for a stay of deportation. Respondent's September 6, 1994 denial of a stay contained a lengthy explanation of the basis for his decision. (A.R. at 1–3). Although Respondent incorrectly asserted that Petitioner had not filed an appeal, (A.R. at 2), he provided a careful analysis of the factors in Petitioner's favor as well as of the adverse factors, such as Petitioner's lengthy criminal history. (A.R. at 2–3).

Respondent's second denial of a stay was less detailed. (Def.Supp.Memo. in Support of Def. Motion to Dismiss, Attachment "A"). Respondent concluded: "There is nothing in your request that has not been considered by the Immigration Judge in the 212(c) hearing, the District Director in the previous denial of the Stay of Deportation, and the Immigration Judge on the Motion to Reopen. There is very little likelihood that the Board of Immigration Appeals will find in your favor." *Id.*

Respondent's determination rests upon the same faulty procedure initially relied upon to screen a belated appeal in *Bonneau:* a preliminary and adverse review of the merits of the appeal. But *Bonneau* teaches that such preliminary determinations are irrelevant. Once a claim of deprivation of the right to appeal through ineffective assistance of counsel is shown, it is for the appellate tribunal (in this case, the BIA) to determine the merits. Petitioner has unfairly been deprived of his right of appeal on the merits; he has, as a result, established a reasonable claim that he would be denied due process if he were to be deported before the BIA reaches a decision on the merits through review of his Motion to Reopen. Thus, Respondent abused his discretion in denying a stay of deportation to Petitioner pending that determination. *Cf. Blancada v. Turnage,* 891 F.2d 688 (9th Cir.1989) (holding motion

to reopen involved nonfrivolous constitutional challenge to deportation order and thus district director abused discretion in denying stay); *Castaneda–Suarez v. INS,* 993 F.2d 142 (7th Cir.1993) (issuing stay of deportation order pending BIA decision on ineffective assistance of counsel claim); *Arango–Arandondo v. INS,* 13 F.3d 610, 615 (2d Cir.1994) (granting 60–day stay of deportation to allow filing of motion to reopen with BIA based on ineffective assistance of counsel claim).

Accordingly, I will order that Petitioner's deportation be stayed pending the resolution of his pending appeal from the denial of his Motion to Reopen. In this connection, I anticipate that Petitioner's deportation should be stayed, if he is unsuccessful before the BIA, for at least ninety days thereafter, during which time Petitioner may file an appeal on the merits with the Court of Appeals for the First Circuit. *Cf. Chudshevid v. INS,* 641 F.2d 780, 784 (9th Cir.1981) ("if the Chudshevids had filed a motion to reconsider within the six month [now 90 day] time period, and subsequently had filed a petition for review of the denial of that motion within six months [now 90 days] following the denial of the motion, this court would have retained jurisdiction to review both the initial deportation order and the subsequent denial of the motion.") (citation omitted); *Fuentes v. INS,* 746 F.2d 94, 97 (1st Cir.1984).

### V. *Release From Custody*

■ Petitioner also has requested that the writ of habeas corpus be employed to direct that he be released from custody. I decline to do so. Even if there has been no "final order of deportation," as defined by 8 C.F.R. § 243.1, because there has been no valid BIA review of the merits of Immigration Judge Bagley's decision, Petitioner may nevertheless be detained under 8 U.S.C. § 1252(a)(1), which authorizes the detention of an alien "[p]ending a determination of deportability." I will remand to the District Director to make an initial determination, in light of this Memorandum, regarding whether Petitioner should be released. *Cf. In the Matter of Ghalamsiah,* 806 F.2d 68 (3d Cir. 1986) (holding under 8 U.S.C. § 1252(c), Attorney General has exclusive discretionary authority to release on bail an alien, not

illegally detained, pending a motion to reopen deportation proceedings, subject to review by a district court); *Caporali v. Whelan,* 582 F.Supp. 217, 220 (D.Mass.1984).

### VI. *Conclusion*

Petitioner has made a reasonable showing that, if, as a result of counsel's failure to file a timely appeal, he were to be deported before the BIA has the opportunity to decide his appeal on the merits, there would be a violation of the Fifth Amendment. Thus, Respondent's refusal to stay Petitioner's deportation constitutes an abuse of discretion. Accordingly, for the reasons set forth more fully above, it is hereby ORDERED

(a) That Petitioner's deportation be stayed pending the decision of the Board of Immigration Appeals on the appeal from denial of his Motion to Reopen; and it is FURTHER ORDERED

(b) That should the Board deny Petitioner's Motion to Reopen, his deportation shall be stayed an additional ninety days, so that Petitioner may be afforded the opportunity to file, *with the United States Court of Appeals for the First Circuit,* an appeal challenging the merits of the decision of the BIA; and it is FURTHER ORDERED

(c) That the Petitioner's request for release be DENIED without prejudice to renewal of a request for release directed to Respondent.

### *JUDGMENT*

In accordance with this Court's Memorandum and Order on November 28, 1994, it is hereby ORDERED

(a) That Petitioner's deportation be stayed pending the decision of the Board of Immigration Appeals on the appeal from denial of his Motion to Reopen; and it is FURTHER ORDERED

(b) That should the Board deny Petitioner's Motion to Reopen, his deportation shall be stayed an additional ninety days, so that Petitioner may be afforded the opportunity to file, *with the United States Court of Appeals for the*

*First Circuit,* an appeal challenging the merits of the decision of the BIA.

DATED: November 29, 1994