**Sharon MENDONCA, Plaintiff,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE and Board of Immigration Appeals, Defendants.**

No. Civ.A. 98–11759–PBS.

United States District Court, D. Massachusetts.

Jan. 13, 1999.

Sharon Hughes Mendonca, Cambridge, MA, for Plaintiff.

Anthony W. Norwood, U.S. Department of Justice, Office of Immigration, Litigation, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### INTRODUCTION

*Pro se* plaintiff Sharon Mendonca has filed a complaint requesting this Court to review an immigration judge's ("IJ") denial of her husband's application for adjustment of status pursuant to section 245 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1255, and to enjoin his deportation. Mendonca claims that the IJ and the Board of Immigration Appeals ("BIA") failed to consider evidence of certain favorable equities in support of her husband's application (i.e., his twelve-year residency in the United States, his familial ties to a wife and daughter who are citizens, and his disability). She also seeks a court order compelling his naturalization. The government moves to dismiss this action pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction under the "transitional" judicial review provisions of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRI-RA"), Pub.L. No. 104–208, Div. C, Tit. III, Subtit. A, § 309(c)(4)(E), 110 Stat. 3009–546, 3009–626 (Sept. 30, 1996), and the naturalization provisions of the INA, 8 U.S.C. § 1421(a), (c)–(d), and pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted.

After hearing, the government's motion to dismiss is **ALLOWED** on the ground that the Court lacks jurisdiction over the plaintiff's claims.

### FACTS AND PROCEDURAL HISTORY

Sharon Mendonca is a native and citizen of the United States. She brings this complaint on behalf of her husband of eight years, Crisanto Mendonca, a citizen of Cape Verde who entered the United States on July 9, 1986, as a nonimmigrant visitor. Mr. Mendonca's visa authorized him to remain in this country until January 8, 1987, but he continued to live here past its expiration date. On November 15, 1990, the INS issued an Order to Show Cause charging him with deportability for remaining in the United States for a period longer than permitted in violation of then-section 241(a)(2) of the INA, 8 U.S.C. § 1251(a)(2).[1] On November 21, 1990, Mr. Mendonca married Sharon Mendonca, with

---

1. The 1990 amendments to the INA recodified section 241(a)(2) as section 241(a)(1)(B), 8 U.S.C. § 1251(a)(1)(B) (1996). This provision was then redesignated as section 237 of the INA by IIRIRA § 305(a)(2), 110 Stat. at 3009–598, and has since been transferred by the compilers of the United States Code to 8 U.S.C. § 1227, *see* 8 U.S.C.A. §§ 1251, 1227 (West Supp.1998).

whom he had been living and with whom he now has a six-year-old daughter.

■ At a hearing before an IJ on February 20, 1991, Mr. Mendonca conceded deportability and was granted additional time to apply for an adjustment of status to lawful permanent resident. Section 245 of the INA authorizes the Attorney General, "in [her] discretion and under such regulations as [s]he may prescribe," to adjust an alien's status to that of "an alien lawfully admitted for permanent residence," provided that the alien satisfies certain statutory requirements. 8 U.S.C. § 1255(a). The alien must show:

> (1) that he was inspected and admitted or paroled into the United States; (2) that he has made an application for ... adjustment; (3) that he is eligible to receive an immigrant visa and is admissible to the United States for permanent residence; and, (4) that an immigrant visa is immediately available to him at the time his application is filed.

*Ruckbi v. INS,* 159 F.3d 18, 19 (1st Cir. 1998) (paraphrasing § 1255(a)). "Once the alien has established threshold statutory eligibility, he must additionally demonstrate to the Attorney General's satisfaction that he merits relief in the exercise of discretion." *Id.* (citing *Henry v. INS,* 74 F.3d 1, 4, 7 (1st Cir.1996)).

On June 5, 1991, the IJ granted Mr. Mendonca voluntary departure on or before September 5, 1991,[2] but deemed his application for adjustment of status abandoned because it had not been filed. Sharon Mendonca subsequently filed a motion to reopen, which was denied on August 14, 1991. Mr. Mendonca filed a second motion to reopen, which the IJ denied on November 1, 1991, in part on the grounds that Mr. Mendonca had not provided the requisite application for adjustment of status with his motion and had failed to comply with procedural requirements regarding his ineffective assistance of counsel claim. Mr. Mendonca simultaneously sought reconsideration of that denial and appealed the matter to the BIA. The IJ denied the motion to reconsider on December 3, 1991, but vacated that decision upon learning that Mr. Mendonca had filed an appeal with the BIA. Mr. Mendonca then withdrew his appeal, and the BIA remanded the proceedings to the IJ on February 20, 1992. On the basis of a statement by the INS that it did not object to Mr. Mendonca's motion to reopen, the IJ reopened the case on March 3, 1992. Mr. Mendonca thereafter submitted to the IJ an application for adjustment of status dated June 7, 1991. Question 24 of the application asks whether the applicant has ever been arrested, cited, charged, indicted, convicted, fined, or imprisoned for breaking or violating any law or ordinance, including traffic violations. Mr. Mendonca answered yes and in a scrawl listed dates 10/7/92, 9/16/90, 1988, and 1989. He generally described the offenses as "fighting" and stated the outcome as "dismissed."

After a hearing at which both Mr. and Mrs. Mendonca testified, the IJ denied Mr. Mendonca's application on October 27, 1992. He determined that Mr. Mendonca was statutorily eligible for adjustment of status but that he was not entitled to the relief as a matter of discretion. Although Mr. Mendonca appeared in good health and employable,[3] he had an arrest record for assault and battery with a dangerous weapon, driving under the influence of alcohol, and disorderly conduct. Mr. Mendonca testified that the criminal charges against him for assault and battery had been dismissed, but did not submit any documentation to support his claim. In

---

**2.** Section 244(e) of the INA provides that, in the discretion of the Attorney General, certain aliens under deportation proceedings may be allowed to leave voluntarily at their own expense in lieu of deportation. *See* 8 U.S.C. § 1254(e) (1996). Provisions governing voluntary departure are now codified at 8 U.S.C. § 1229c. *See* 8 U.S.C.A. § 1229c (West Supp. 1998).

**3.** Indeed, Mr. Mendonca had illegally held various service industry jobs from 1986 through 1991.

addition, the IJ noted that Mr. Mendonca was "extremely evasive" about his criminal history, (Tr. of Oct. 27, 1992, IJ Oral Decision at 15), admitting only after substantial questioning by the IJ and on cross-examination a number of arrests and charges that he had failed to disclose on his application.[4] He also lied under oath about the existence in the United States of a son from a previous marriage who he claimed was living in Cape Verde. Finally, he failed to provide the IJ with federal or state income tax returns for 1990 and 1991, the two years for which he claimed he had filed them. The IJ concluded that Mr. Mendonca's marriage to a United States citizen, his relationship with his daughter, also a United States citizen, and his six-year residence in this country were insufficient to outweigh the adverse factors in his application, and he ordered Mr. Mendonca deported.[5]

Mr. Mendonca, with the assistance of counsel, appealed the IJ's decision to the BIA, which dismissed his appeal on September 24, 1997. The Board rejected Mr. Mendonca's argument that he had been given insufficient time to produce his tax returns or to produce documentary evidence to corroborate his employment history or his claims that certain criminal charges had been dismissed; the Immigration and Naturalization Service ("INS") had put Mr. Mendonca on notice of the relevant evidence a year before the hearing on his application. Noting that new evidence could only be considered if it was material and was unavailable or undiscoverable at the time of the hearing before the IJ, the Board declined to review the documentation that Mr. Mendonca submitted. It acknowledged Mr. Mendonca's family ties and length of residence in the United States but concurred with the IJ that he had failed to meet his burden to establish that he merited discretionary relief.[6] According to the Board, Mr. Mendonca's "propensity to violate the law" and

---

4. The criminal record is not a paragon of clarity. It appears that at the time of the hearing before the IJ, the IJ concluded that Mr. Mendonca had been convicted of at least three offenses: a motor vehicle insurance violation (1989), operating under the influence of liquor, and operating a motor vehicle to endanger (lives and safety). (Aff. of Sharon Mendonca, Attach. 8.) He had been convicted of only the first of these offenses at the time he signed his application for adjustment of status on June 7, 1991. On September 24, 1992, he was charged in the Boston Municipal Court with operating under the influence of liquor and operating to endanger (lives and safety). See id. After the hearing before the IJ, these charges were initially continued without a finding, but when defaults were lodged, a guilty finding was entered and he was committed for thirty days incarceration. See id. Apparently, according to the IJ, Mr. Mendonca had appealed these matters, (Tr. of Oct. 27, 1992, IJ Oral Decision at 15), but this was never included in the criminal record. On April 1, 1992, he was arraigned on three counts in Charlestown District Court of operating under the influence of liquor, operating to endanger (lives and safety), and a compulsory insurance violation. (Aff. of Sharon Mendonca, Attach. 8.) On September 4, 1992, he was found guilty on the first two charges and not guilty on the third. See id. The record reflects an appeal but not the outcome of the

appeal. He was sentenced to probation. See id. On October 27, 1992, he was arraigned on a charge of operating under the influence of liquor (second offense), of which he was found guilty on March 2, 1993. See id.

On September 16, 1988, Mr. Mendonca was arraigned on a charge of assault with a dangerous weapon, which was continued without a finding. See id. On March 12, 1990, he was arraigned on four counts of assault with a dangerous weapon, which were dismissed. See id. On May 6, 1991, and June 18, 1991, he was arraigned for disorderly conduct, but the outcome was unclear. See id. After the hearing before the IJ, Mr. Mendonca was convicted of operating under the influence of liquor (second offense) on March 2, 1993, of the same crime (third offense) on October 15, 1993, and of operating after suspension of a license for drunk driving on November 13, 1995. See id.

5. The IJ also denied Mr. Mendonca's second application for voluntary departure.

6. Longstanding BIA precedent places the burden on the applicant for adjustment of status to show that he merits the relief and, when adverse factors are present, to establish sufficient favorable equities to outweigh them. See, e.g., Matter of Arai, 13 I. & N. Dec. 494, 496 (BIA 1970). Among these favorable equi-

his lack of "forthright[ness]" were not outweighed by the positive equities in his case. (Sept. 24, 1997, BIA Decision at 2.)

Mr. Mendonca is not currently in physical custody.

## DISCUSSION

Sharon Mendonca now asks this Court to reconsider the IJ's and the BIA's determinations that her husband is not entitled to an adjustment of status. She does not challenge the IJ's initial finding of deportability.

### A. *Standing*

Sharon Mendonca's complaint is not styled as a petition for habeas corpus relief under 28 U.S.C. § 2241. However, the government concedes that it may have been filed in reliance on or in response to the First Circuit's decision in *Goncalves v. Reno*, 144 F.3d 110 (1st Cir.1998), *petition for cert. filed*, — U.S. —, 119 S.Ct. 1140, 143 L.Ed.2d 208, 67 U.S.L.W. 3364 (1999) (No. 98–835), and I am required to construe the pleadings of *pro se* litigants "liberally," *see, e.g., Strahan v. Coxe*, 127 F.3d 155, 158 n. 1 (1st Cir.1997) (citing *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)), *cert. denied*, — U.S. —, 119 S.Ct. 81, 142 L.Ed.2d 63 (1998); *see also, e.g., Davis v. Fechtel*, 150 F.3d 486, 487 (5th Cir.1998) (noting that "a court may liberally construe a *pro se* petitioner's pleading and treat it as a habeas corpus petition [under § 2241], where appropriate" (citing *Russell v. Knight*, 488 F.2d 96, 97 (5th Cir. 1973))). Therefore, I treat the complaint as a habeas petition under § 2241.

■ Although Mr. Mendonca is not in the physical custody of the INS, he is nonetheless "in custody" for the purposes of § 2241 because he is subject to a final order of deportation. *See, e.g., Almon v. Reno*, 13 F.Supp.2d 143, 144 n. 2 (D.Mass. 1998) (observing that "custody" under

§ 2241 "does not necessarily mean physical custody" and that "[t]he term 'in custody' has been broadly construed [for purposes of the INA] to apply to situations in which an alien is not suffering any actual physical detention, ... so long as he is subject to a final order of deportation" (citing *Nakaranurack v. United States*, 68 F.3d 290, 293 (9th Cir.1995), and *Motta v. District Director, INS*, 869 F.Supp. 80, 85 (D.Mass.1994), *vacated as moot*, 61 F.3d 117 (1st Cir.1995))); *Mojica v. Reno*, 970 F.Supp. 130, 164–65 (E.D.N.Y.1997) ("In the immigration context courts have ... held that physical restraint is not required for habeas jurisdiction. Where the petitioner is subject to a final order of deportation, the 'custody' requirement is satisfied [under § 2241 and the common law] ...." (citing numerous cases)), *aff'd in part and dismissed in part sub nom. Henderson v. INS*, 157 F.3d 106, 130–31 (2d Cir.1998), *petition for cert. filed* (Dec. 17, 1998) (No. 98–996); *cf. Daneshvar v. Chauvin*, 644 F.2d 1248, 1251 (8th Cir. 1981) (" 'Custody,' in the ... context [of the district courts' habeas jurisdiction under section 106 of the INA], refers not only to [literal] confinement ..., but also [to] that restriction of movement resulting from any final order of deportation." (citing *United States ex rel. Parco v. Morris*, 426 F.Supp. 976, 978 n. 4 (E.D.Pa.1977))).

■ Although the INS does not contest the standing of Mr. Mendonca's wife to press this habeas corpus petition, this Court addresses this threshold jurisdictional question. A possible basis for Mrs. Mendonca's standing to bring this suit is the "next friend" doctrine. "Next friend" standing "has long been an accepted basis for jurisdiction" in the context of habeas petitions when the "next friend" both "provide[s] an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his own behalf," and is "truly dedicated to the best interests of the person on whose behalf [s]he

ties are family ties in the United States, the hardship that would result from deportation,

and the length of residence in this country. *See, e.g., id.*

seeks to litigate." *Whitmore v. Arkansas,* 495 U.S. 149, 162–64, 110 S.Ct. 1717, 109 L.Ed.2d 135 (1990) (citing cases and noting that the " 'next friend' must have some significant relationship with the real party in interest"); *see also Hamilton v. Texas,* 497 U.S. 1016, 1017, 110 S.Ct. 3262, 111 L.Ed.2d 772 (1990); *Figueroa v. Rivera,* 147 F.3d 77, 81–82 (1st Cir.1998) (remarking that " 'next friend' habeas petitions are rare" because of the stringent prerequisites for bringing them). "The burden is on the 'next friend' clearly to establish the propriety of [her] status and thereby justify the jurisdiction of the court." *Whitmore,* 495 U.S. at 164, 110 S.Ct. 1717.

█ Although Mrs. Mendonca clearly meets the "significant relationship" requirement and has her husband's best interests at heart, it is less certain whether Mr. Mendonca possesses the kind of mental incapacity that would preclude him from representing himself. At hearing before this Court on December 2, 1998, Mr. Mendonca asserted that he suffered a traumatic brain injury in a motor vehicle accident. Social Security Administration records filed with the complaint indicate that Mr. Mendonca has been "severe[ly]" disabled ("mental retardation with depression and a personality disorder") under Social Security Act standards since at least January 21, 1994. (Aff. of Sharon Mendonca, Attach. 10.) Based on my lay observations, Mr. Mendonca's demeanor at the hearing indicated some physical and/or mental impairment. In contrast, Mrs. Mendonca was articulate in support of her husband. Concluding that the plaintiff has standing in these circumstances, I proceed to the jurisdictional issues under the INA and the 1996 amendments to the immigration laws.

### B. *Jurisdiction*

#### 1. *Adjustment of Status*

█ Since the 1961 amendments to the INA, the federal courts of appeals have had " 'sole and exclusive' " jurisdiction over direct appeals from final deportation orders. *Jorge v. Hart,* No. 97 Civ. 1119(MBM), 1997 WL 531309, at *2 (S.D.N.Y. Aug. 28, 1997) (quoting INA § 106(a), 8 U.S.C. § 1105a(a) (1994) (repealed 1996)); *see also, e.g., Motta,* 869 F.Supp. at 83–84 (same). Included within this jurisdiction was review of all executive decisions on which the validity of the final orders was contingent, or that were made incident to the orders. *See, e.g., INS v. Chadha,* 462 U.S. 919, 937–38, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983); *Cheng Fan Kwok v. INS,* 392 U.S. 206, 217, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968); *Foti v. INS,* 375 U.S. 217, 229, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963). Section 106 of the INA did carve out one exception to this exclusive jurisdiction: consistent with 28 U.S.C. § 2241, federal district courts could hear habeas petitions from aliens who were " 'in custody pursuant to an order of deportation.' " *Jorge,* 1997 WL 531309, at *2 (quoting INA § 106(a)(10), 8 U.S.C. § 1105a(a)(10) (1994) (repealed 1996)); *see also, e.g., Nakaranurack,* 68 F.3d at 293 (same); *Motta,* 869 F.Supp. at 84 (same).

On September 30, 1996, Congress enacted IIRIRA, which was intended to eliminate much of federal court judicial review of deportation orders. IIRIRA contains two sets of new rules: the new permanent rules, which generally apply only to cases in which the INS initiated removal[7] proceedings on or after April 1, 1997 (the effective date of IIRIRA), and the "transitional" rules, which apply to deportation proceedings commenced before that date. *See* IIRIRA §§ 306(a), 309(a), (c), as amended by Act of Oct. 11, 1996, Pub.L. No. 104–302, 110 Stat. 3656, 3657; *see also, e.g., Henderson,* 157 F.3d at 117 (explaining the new statutory provisions); *Goncalves,* 144 F.3d at 116 (same). Because the INS instituted proceedings against Mr.

---

**7.** IIRIRA abolished the former distinction under the INA between exclusion proceedings and deportation proceedings and "combin[ed] the two into a new proceeding known as a 'removal proceeding.' " *Goncalves,* 144 F.3d at 115 n. 2.

Mendonca on November 15, 1990, the transitional rules apply to his claims. With regard to transitional changes in judicial review, IIRIRA § 309(c)(4) provides:

> In the case [of an alien whose deportation proceedings commenced before April 1, 1997, and] in which a final order of exclusion or deportation is entered more than 30 days after the date of enactment of this Act [ (after September 30, 1996) ], notwithstanding any provision of section 106 of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act) to the contrary—
>
> . . . .
>
> (E) there shall be *no appeal of any discretionary decision under section* 212(c), 212(h), 212(i), 244, or *245* of the Immigration and Nationality Act (as in effect as of the date of the enactment of this Act).

IIRIRA § 309(c)(4)(E) (emphasis added).[8] The BIA's order in Mr. Mendonca's case was entered on September 24, 1997, many more than thirty days after IIRIRA's enactment; therefore, IIRIRA § 309(c)(4)(E) applies to his application for adjustment of status.

Although there is no case directly on point concerning § 309(c)(4)(E), the courts of appeals have agreed that IIRIRA's transitional judicial review provisions remove their former jurisdiction over direct appeals from final deportation orders under an analogous provision containing identical prohibitive language ("there shall be no appeal"). *See, e.g., Henderson,* 157 F.3d at 118 (citing cases from nearly every circuit and interpreting IIRIRA § 309(c)(4)(G), a transitional rule that pertains to aliens convicted of certain criminal offenses); *Goncalves,* 144 F.3d at 113, 116–18 (same). IIRIRA's sweeping jurisdiction-stripping language would seem to cover habeas review in the district courts as well. However, the First Circuit has recently held that although Congress eliminated the district courts' grant of habeas jurisdiction under old INA § 106(a)(10), *see id.* at 121, it did not intend to repeal their jurisdiction over habeas petitions in immigration cases under the general habeas statute, 28 U.S.C. § 2241, *see id.* at 113, 119–23 ("We ... conclude ... that Congress neither explicitly nor by implication repealed the grant of jurisdiction in 28 U.S.C. § 2241 to issue writs of habeas corpus to persons in federal custody which the federal district courts have had since 1789 and which has always been available in immigration cases."); *see also, e.g., Henderson,* 157 F.3d at 118–19, 122 ("[W]e hold that the federal courts have jurisdiction under § 2241 to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'" (quoting 28 U.S.C. § 2241)).

Even so, Mrs. Mendonca does not present the kind of claim that the First Circuit has held is cognizable on habeas review under IIRIRA's new judicial review provisions. The court's holding in *Goncalves* as to the scope of habeas review was by its own terms "narrow" and based on "the precise nature of the claims [that Mr. Goncalves] asserted," which the court construed as "pure issues of law concerning

---

**8.** Although IIRIRA § 306 is "generally concerned with the permanent rules," *Goncalves,* 144 F.3d at 118, which do not affect Mr. Mendonca, IIRIRA § 306(a) adds new INA § 242(g), 8 U.S.C. § 1252(g), which does apply retroactively to Mr. Mendonca's case, *see* IIRIRA § 306(c) (providing that new INA § 242(g) applies "without limitation to claims arising from all past, pending or future exclusion, deportation or removal proceedings under this Act"); *American–Arab Anti–Discrimination Comm. v. Reno,* 119 F.3d 1367, 1371 (9th Cir.1997). The new INA § 242(g), which applies generally to all aliens, not solely to applicants for discretionary relief from deportation, provides:

> (g) EXCLUSIVE JURISDICTION.—Except as provided in [new INA § 242] and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

INA § 242(g), 8 U.S.C. § 1252(g).

the applicability of [certain of the new] statutory provisions to pending cases." *Goncalves*, 144 F.3d at 133 (referring to Goncalves' claim that Congress did not intend section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (Apr. 24, 1996) (codified as amended in scattered sections of 8, 15, 18, 22, 28, 40, 42, and 50 U.S.C.), which restricted the availability of discretionary relief from deportation to aliens who had committed certain criminal offenses, to apply retroactively to aliens who applied for the relief before AEDPA was enacted).

The First Circuit expressly declined to decide whether habeas review under the new laws extends beyond constitutional questions and questions of statutory interpretation, in contrast, to purely discretionary decisions of immigration officials in individual cases. *See id.* at 113 (noting that *Goncalves* did not involve review of the INS' "exercise of discretion," but only concerned "a pure issue of law"); *id.* at 125 (carefully distinguishing "the decision whether an alien is eligible to be considered for a particular discretionary form of relief," a "statutory question," from "the discretionary component of the administrative decision whether to grant relief"); *id.* (emphasizing that the court was "not being asked to 'review[ ] and revers[e] the manner in which discretion was exercised' by examining 'the evidence in the record supporting or undermining the alien's claim to discretionary relief'" (alterations in original) (quoting *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268, 74 S.Ct. 499, 98 L.Ed. 681 (1954))); *id.* at 127 (noting that the question of AEDPA § 440(d)'s retroactivity, "a 'pure question of statutory construction for the courts to decide,'" is " 'quite different from the question of interpretation that arises in each case in which the agency is required to apply [statutory] standards to a particular set of facts' which involves the agency's particular expertise" (alteration in original) (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 446, 448, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987))).

Instead, although the court acknowledged that "habeas jurisdiction ... traditionally allowed review, under a 'manifest abuse of discretion' standard, of the exercise of discretion to deny relief," *id.* at 125 n. 17, it cautioned that "nothing we say should be taken to suggest that such review as is [now] available on habeas is necessarily as broad as the traditional administrative review available under old INA § 106," *id.* at 125; *see also id.* ("We leave to future cases the task of defining the precise limit of the jurisdiction under 28 U.S.C. § 2241 in immigration cases. We hold only that § 2241 allows us to consider the pure statutory question that Goncalves raises ...." (footnote omitted)).

In essence, Mrs. Mendonca's claim amounts to an assertion that the IJ erred in the exercise of his discretion in denying her husband's application for adjustment of status. In the section of her complaint labeled *"JURISDICTION,"* she asks this Court to review the IJ's purely discretionary decision: "This case is being filed in this Federal Court to be reopened in the District Court due to the filing on October 27, 1992 [ (the date that the IJ denied Mr. Mendonca's application) ]." (Compl.¶ 4.) Unlike Mr. Goncalves, whose application for discretionary relief was never heard by the BIA because of an issue of statutory construction, *see Goncalves*, 144 F.3d at 112, Mr. Mendonca has had his application heard and is now asking me to reconsider the manner in which the IJ and the BIA exercised discretion. No court thus far has extended *Goncalves'* holding to encompass claims of this sort.[9] Given the sweeping language of IIRIRA's judicial review provisions and the conviction of many courts that Congress intended the new

---

9. Nearly every circuit that has considered the issue has now held that *some* residual § 2241 habeas jurisdiction still exists in the district courts in at least some cases under the new immigration laws. *See, e.g., Henderson,* 157 F.3d at 118 (citing cases); *Goncalves,* 144 F.3d at 126 (same). *But see Richardson v. Reno,* 162 F.3d 1338, 1357–58, 1377 (11th

immigration laws to narrow significantly the scope of federal courts' review of INS deportation decisions, *see, e.g., Henderson,* 157 F.3d at 119; *Goncalves,* 144 F.3d at 125, I decline to do so here.

Mrs. Mendonca suggests that the IJ and BIA did not take the favorable equities in her husband's case into account in making their decisions. Attached to the complaint are the Mendoncas' marriage certificate, their daughter's birth certificate, copies of their tax records for the tax years 1989 through 1991, Mr. Mendonca's criminal record, character references pertaining to him, his application for adjustment of status and the Notice of Approval of his Relative Immigrant Visa Petition, and documentation of his eligibility for disability benefits. However, both decisionmakers clearly *did* consider Mr. Mendonca's family ties and the approval of his visa petition, the latter of which was necessary to make him eligible for adjustment of status in the first place. The tax records and evidence of the dismissal of certain criminal charges would have been available at the time of the hearing before the IJ and, in accordance with agency rules, should have been submitted then, *cf.* 8 C.F.R. § 3.2(c) (1998) (stating that a proceeding can be reopened before the BIA only if the new evidence "sought to be offered is material and was not available and could not have been discovered or presented at the former hearing"). Mr. Mendonca's eligibility for disability benefits, if relevant, was determined well after the IJ made his decision and should have been presented to the BIA through a motion to reopen. In some respects this is a sympathetic case, because the most serious criminal charges involving allegations of violence were eventually dismissed and Mr. Mendonca lied about his first child, who was present illegally in this country, for fear of jeopardizing his status. Also, as mentioned earlier, Mr. Mendonca has a mental impairment, and his wife and daughter clearly love him very much. On the other hand, the record does support the conclusion that he was evasive about his criminal history, which includes several driving-under charges just before the IJ's hearing on his application. Nonetheless, this complaint boils down to a claim of abuse of discretion in weighing the equities, a claim over which this Court has no jurisdiction.[10]

### 2. *Naturalization*

■ This court also lacks independent jurisdiction to order Mr. Mendonca natu-

---

Cir.1998) ("[W]e conclude that INA § 242(g) [ (one of IIRIRA's permanent judicial review provisions) ] repeals § 2241 habeas jurisdiction over immigration decisions."). However, the federal courts have disagreed about the scope of this jurisdiction. Some district courts, for example, have found that the new laws preserve habeas jurisdiction only for serious constitutional questions. *See, e.g., Moore v. District Director, INS,* 956 F.Supp. 878, 882–83 (D.Neb.1997) (asserting that habeas jurisdiction now extends only to claims of " 'grave constitutional error' " or " 'fundamental miscarriage of justice' " (quoting *Powell v. Jennifer,* 937 F.Supp. 1245, 1252–53 (E.D.Mich.1996))); *In re Castellanos,* 955 F.Supp. 96, 97 (W.D.Wash.1996) (same). The only circuit court besides the First Circuit to face directly the issue of the scope of habeas review under the new laws in the context of a statutory claim has reiterated *Goncalves'* holding. *See Henderson,* 157 F.3d at 112, 120 (citing *Goncalves* and concluding that, "whatever the outer perimeters of [habeas] review may be, the courts have the power to address

... pure questions of law"); *id.* at 122 ("This is not to say that every statutory claim that an alien might raise is cognizable on habeas. But those affecting the substantial rights of aliens of the sort that the courts have secularly enforced ... surely are.").

10. I also do not interpret Mrs. Mendonca's complaint to state a claim for ineffective assistance of counsel under the Fifth Amendment. In the complaint and at the hearing before me, she did imply that the IJ's failure to consider certain evidence was due at least in part to the failure of her husband's attorney at the time to present it. (Compl.¶ 4.) However, although *pro se* pleadings are construed liberally, "some degree of specificity as to [the] plaintiff's allegations" is required in order to state a claim. *Azubuko v. Board of Trustees,* No. C.A. 97–628 ML, 1998 WL 686741, at *2 (D.R.I. Sept. 17, 1998) (citing *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988)). Mrs. Mendonca did not specifically allege an ineffective assistance of counsel claim in her complaint or pursue such a claim before this

ralized. Under section 310 of the INA, the "sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General." 8 U.S.C. § 1421(a); *see also id.* § 1421(d) ("A person may only be naturalized as a citizen of the United States in the manner and under the conditions prescribed in this subchapter...."); *INS v. Pangilinan,* 486 U.S. 875, 883–84, 108 S.Ct. 2210, 100 L.Ed.2d 882 (1988) (holding that the federal courts do not have "the power to make someone a citizen" except to the extent authorized to do so by Congress in the exercise of its exclusive authority over naturalization). District courts are relegated to reviewing *de novo* denials of naturalization applications by immigration officers. *See* 8 U.S.C. § 1421(c) ("A person whose application for naturalization ... is denied, after a hearing before an immigration officer ..., may seek review of such denial before [a] United States district court.... Such review shall be de novo....").

▮ In this case, there is no evidence that the completed naturalization application attached to the complaint and dated August 21, 1998, was ever submitted to the INS. In any event, Mr. Mendonca would be ineligible for naturalization at this point, because he is subject to a final deportation order. *See id.* § 1429 ("[N]o person shall be naturalized against whom there is outstanding a final finding of deportability pursuant to a warrant of arrest issued under the [INA]...."); *United States v. Ali,* 757 F.Supp. 710, 713 (W.D.Va.1991) (noting that "an order to 'show cause' issued in a deportation proceeding ... is regarded as a 'warrant of arrest'" for purposes of § 1429 (citing cases and 8 C.F.R. § 318.1 (1990))).

### ORDER

The government's motion to dismiss (Docket No. 7) is ***ALLOWED.***

Court, much less set forth sufficient facts or detail to support one.